UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

THOMAS GLEASON,

    Plaintiff,

    -v-

BAYOU MANAGEMENT, LLC, SAMUEL
ISRAEL, III, DANIEL MARINO, BAYOU
GROUP, LLC, BAYOU SECURITIES, LLC, BAYOU
ADVISORS, LLC, BAYOU EQUITIES, LLC,
BAYOU FUND LLC, BAYOU SUPERFUND, LLC,
BAYOU NO LEVERAGE FUND, LLC, BAYOU
AFFILIATES FUND, LLC, BAYOU ACCREDITED
FUND, LLC, and JOHN DOES, 1-25, Inclusive,

    Defendants.

-------------------------------------------------------------------X

**05 CV 8532**

_____ Civ._____ (   )

**COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff, Thomas Gleason ("Mr. Gleason" or "Plaintiff") by his undersigned attorneys,

Conway & Conway, for his complaint against Defendants alleges with knowledge with respect to

himself and his own acts, and otherwise upon information and belief as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff is an investor who invested money with Defendants. This action arises

out of a scheme by Defendants, collectively a Connecticut money-management "hedge fund"

firm and collection of hedge funds, to fraudulently convert and misappropriate Plaintiff's

investment of three hundred thousand dollars ($300,000).

2.    Plaintiff made three separate investments on three separate occasions in the

amounts of $100,000, $150,000 and $50,000 respectively, with Bayou Funds beginning in or

about January 2002 and ending in or about October 2004. Beginning with his initial investment,

Plaintiff received detailed information and correspondence on a regular basis from Defendants

regarding his investments, the performance of the funds, the positions the funds were invested in, the average number of positions traded and whether they were short or long, and the specific breakdown of each sector, among other information. Plaintiff also received monthly statements, e-mail updates and was invited to participate on periodic telephone conference calls with Mr. Israel to discuss the funds' performance as well as other topics pertinent to the financial markets.

3.      By letter dated July 27, 2005, Defendants notified Plaintiff and, upon information and belief, all "Bayou Family of Funds Members" that the Bayou Family of Funds would be closing at the end of July 2005. In that letter, Defendants represented that upon the completion of a final audit, all investors would receive 100% payout on their investments. Defendants further represented that investors would be updated while the audit was in progress in an effort to inform investors of the anticipated date of final payments.

4.      Defendants again notified Plaintiff and, upon information and belief, all "Bayou Family of Funds Members", by letter dated July 29, 2005 with a purported update on the audit/closure procedure. That letter referred Plaintiff to the Amended and Restated Operating Agreement of Bayou Accredited Fund, LLC (the "Operating Agreement") and indicated that the procedure outlined in the Operating Agreement described the process of the liquidation of investor funds. Defendants further represented that the final results would not be materially different from the information furnished to each investor in their June statement.

5.      Plaintiff again received a purported update on the audit process from Defendants which was dated August 11, 2005. In that letter Defendants represented that with the auditor's approval they were attempting to send out a 90% balance to each investor by the following week, specifically by Wednesday, August 17, 2005 and that the remaining 10% would be paid by the close of August 2005. Defendants further represented in that letter that all communication

2

should be addressed to Bayou at their Stamford, CT address and that the offices would remain open until October 2005.

6.     Upon information and belief, contrary to representations made by Defendants, Defendants' offices are no longer open.

7.     Upon information and belief, Defendants are currently being investigated for possible fraudulent conduct by, at a minimum, the following authorities: the Securities and Exchange Commission (the "SEC"), the Federal Bureau of Investigation (the "FBI"), the civil division of the Connecticut State Attorney General's Office (the "CT AG's Office), the Securities and Business Investment Division of the Connecticut Department of Banking (the "CT Dept. of Banking") and the United States District Attorney's Office for the Southern District of New York (the "U.S.D.A.'s Office).

## I.     **THE PARTIES**

8.     Plaintiff, Thomas Gleason, is an individual and a Rhode Island resident.  Mr. Gleason is a college graduate and currently employed as an account director for a computer company.

9.     Defendant Samuel Israel, III ("Mr. Israel") is an individual and a citizen of New York and upon information and belief resides at 52 Oregon Road, Bedford Corners, NY 10549. Upon information and belief, at all relevant times Mr. Israel was and is the Chief Executive Officer and Chief Investment Officer of the Bayou Group, LLC (the "Bayou Group") and a fund manager of Bayou Fund, LLC (the "Bayou Fund").   Upon information and belief, at all relevant times Mr. Israel was and is a registered representative with Bayou Securities, LLC (Bayou Securities").

3

10.    Defendant Daniel Marino ("Mr. Marino") is a citizen of Connecticut and upon information and belief resides at 261 Bayberry Lane, Westport, CT 06880. Upon information and belief at all relevant times Mr. Marino was and is the Chief Financial Officer ("CFO") and Chief Operating Officer ("COO") of the Bayou Group, Bayou Management and a fund manager of Bayou Fund.

11.    Defendant Bayou Management is a limited liability management firm organized under the laws of the State of New York with a principal place of business in Stamford, Connecticut.

12.    Defendant Bayou Group is a limited liability company organized under the laws of the state of Connecticut with its principal place of business in Stamford, Connecticut. Upon information and belief, the Bayou Group includes the family of companies and individuals that created, own, operate and/or control the following hedge funds among others: Bayou Fund, LLC the "Bayou Fund"), Bayou Super Fund, LLC (the "Bayou Super Fund"), Bayou No Leverage Fund, LLC (the "Bayou No Leverage Fund"), Bayou Affiliates Fund, LLC (the "Bayou Affiliates Fund"), Bayou Accredited Fund, LLC (the "Bayou Accredited Fund") (hereinafter collectively referred to as the "Bayou Family Funds").

13.    Defendant Bayou Securities is a limited liability broker/dealer firm organized under the laws of the State of New York with a principal place of business in Stamford, Connecticut. Upon information and belief, Bayou Securities is and was at all relevant times registered with the SEC as a broker/dealer, and a member of the National Association of Securities Dealers ("NASD"). Bayou Securities maintained its principal place of business at 40 Signal Road, Stamford, Connecticut 06902. Upon information and belief, Bayou Securities is a subsidiary of the Bayou Group and executes trades involving the Bayou Family of Funds.

14. Defendant Bayou Advisors, LLC ("Bayou Advisors") is a limited liability company organized under the laws of the state of Delaware with a principal place of business in Stamford, Connecticut. Upon information and belief the company is a member of the Bayou Group.

15. Defendant Bayou Equities, LLC ("Bayou Equities") is a limited liability company organized under the laws of the state of Delaware with a principal place of business in Stamford, Connecticut. Upon information and belief the company is a member of the Bayou Group.

16. Defendant Bayou Fund, LLC ("Bayou Fund") is a limited liability company organized under the laws of the state of New York with a principal place of business in Stamford, Connecticut. The Bayou Fund is a domestic hedge fund managed by Bayou Management. Upon information and belief the Bayou Fund is a member of the Bayou Group.

17. Defendant Bayou Super Fund, LLC ("Bayou Super Fund") is a limited liability company organized under the laws of the state of Delaware with a principal place of business in Stamford, Connecticut. Upon information and belief the Bayou Super Fund is a member of the Bayou Funds.

18. Defendant Bayou No Leverage Fund is a limited liability company organized under the laws of the state of Delaware with a principal place of business in Stamford, Connecticut. Upon information and belief the Bayou No Leverage Fun is a member of the Bayou Funds.

19. Defendant Bayou Affiliates Fund is a limited liability company organized under the laws of the state of Delaware with a principal place of business in Stamford, Connecticut. Upon information and belief, the Bayou Affiliates Fund is a member of the Bayou Funds.

20.     Defendant Bayou Accredited Fund is a limited liability company organized under the laws of the state of Delaware with a principal place of business in Stamford, Connecticut. Upon information and belief the Bayou Accredited Fund is a member of the Bayou Funds.

21.     Defendants John Does 1-25 are individuals with unknown residence and business affiliations and unknown business entities.  Plaintiff does not know the names or capacities of these Defendants John Does 1-25 but believes them to be either corporate entities, agents, employees, representatives, subcontractors, principals, officers or directors of the Bayou Group, acting within the course and scope of their agency or employment or some other capacity responsible to provide relief set forth in the Complaint.  When the true names of said Defendants are ascertained, Plaintiff will amend this complaint by inserting the true names and capacities of said Defendants.

22.     All Defendants are hereinafter collectively referred to as "Defendants".

## II.     JURISDICTION, VENUE AND JURY DEMAND

23.     This Court has jurisdiction over this action and the subject matter hereof pursuant to 28 U.S.C. § 1332 (a) as this action is between citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

24.     Personal jurisdiction over Defendants is based on Article 3 of New York's CPLR. This Court has personal jurisdiction over Defendants who reside in the State of New York, and/or transact business in the State of New York, and/or in concert with one another engaged in tortious conduct in the State of New York such that this suit does not offend traditional notions of fair play and substantial justice.

25.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

26.     Plaintiff hereby demands a jury trial.

### III.     ALLEGATIONS COMMON TO ALL CLAIMS

**Creation of and Background Information on the Bayou Entities**

27.     According to marketing materials distributed to Plaintiff and upon information and belief, Mr. Israel founded the Bayou Group in June 1996 with the incorporation of the Bayou Fund and opened it to investors in January 1997.  Upon information and belief, Mr. Israel then started and added Bayou Securities and Bayou Management to the Bayou Group in 1997 and Bayou Advisors and Bayou Equities to the Bayou Group in 2001.  The Bayou Group set a minimum investment of $250,000 for any investor seeking to invest in any of the hedge funds included in the Bayou Family of Funds. The Bayou Group's minimum investment was a much lower minimum investment than was typically required by other hedge funds making it a more affordable investment for Plaintiff as well as other investors.  Additionally, the Bayou Group also advertised as a major selling point the fact that it did not charge investors a management fee (typical of other funds) but rather received an incentive fee of twenty percent (20%) of the funds' annual gains.

28.     The Bayou Group claimed to Plaintiff and other investors that the goal of the funds was to provide members with steady, above average market returns while maintaining a lower risk profile than is normally associated with similar strategies.

29.     As an additional selling point the Bayou Group claimed that investors were also allowed to leave the funds on relatively short notice, a feature attractive to Plaintiff because it was not common with investing in other hedge funds.

30.     Marketing materials distributed to Plaintiff described Mr. Israel as the principal and manager of the Bayou Fund, and an individual with nearly 20 years of extensive experience

in the management of hedge funds along with fundamental analysis, trading skills and portfolio management.    Those materials also listed several hedge funds Mr. Israel was purportedly associated with over the years including Omega Advisors where Mr. Israel allegedly was head trader from 1992-1996 managing assets exceeding $4 billion.

31.    Marketing materials also described Mr. Marino as Bayou Management's CFO and COO with responsibilities that included the business management of all Bayou Management entities and affiliates, including the Bayou Funds and Bayou Securities.

32.    Additionally, those same marketing materials stated that the Mr. Israel and Mr. Marino's association together dates back to 1990 when the two were employed with HMR Investors, LP where Mr. Marino was also CFO and COO and Mr. Israel was in charge of short term trading.

33.    Defendants also represented to Plaintiff that the Bayou Family of Funds held over four hundred million dollars ($400,000,000) in assets under management from over one hundred (100) investors.

34.    Defendants additionally represented to Plaintiff that the Bayou Family of Funds transacted most of their brokerage business through Bayou Securities which purportedly offered several advantages to Bayou investors including "regulatory transparency" and "execution efficiency".  Defendants claimed that because Bayou Securities is audited on a periodic and a surprise basis by the NASD and SEC, an extra and somewhat unusual level of protection existed. Defendants further claimed that because of the rapid turnover in the Bayou Funds, transacting business through Bayou Securities would allow for more efficient executions of trades for Bayou investors.

35.    All of these representations were made with the intent to attract and solicit investor money, including that of Plaintiff, as well as to provide a level of comfort and security for Bayou investors.

**The Operating Agreement and Defendants Duties and Obligations Thereunder**

36.    The Bayou Family of Funds each was purportedly governed by operating agreements, in the case of Plaintiff's investments, the Amended and Restated Operating Agreement of Bayou Accredited Fund, LLC (the "Operating Agreement").

37.    According to the Operating Agreement, the Defendants are permitted, among other things, to purchase, invest, trade and sell, in capital stock, subscriptions, warrants, bonds, notes, debentures, convertible, rights, options, puts and calls relating thereto and other securities (both equity and debt) of companies, including financial instruments, indices and derivatives (collectively referred to as "Securities").

38.    As the purported managers of the Bayou Funds, and as delineated in the Operating Agreement, Mr. Israel and Mr. Marino held themselves out as responsible for directing, managing and controlling the business of the funds with (as agreed to by Plaintiff) full and complete authority, power and discretion to do so.   Pursuant to the Operating Agreement Defendants also had the complete authority, power and discretion to make all decisions regarding such matters and to perform any and all other acts or activities customary or incident to the management of the business of the funds, including Plaintiff's investments.

39.    The Operating Agreement also outlined Defendants' liability to investors. Defendants were liable to Plaintiff, as well as and each investor, and had a duty and an obligation to perform their managerial duties in good faith, in a manner they reasonably believed to be in

the best interests of the funds and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

40.    Additionally, pursuant to the Operating Agreement, Defendants are liable to Plaintiff for any loss or damage resulting from fraud, deceit, gross negligence, willful misconduct, or a wrongful taking of funds by the Defendants.

41.    Plaintiff reasonably relied upon Defendants and their obligation and duty to perform in good faith, in a manner they reasonably believed to be in the best interests of the funds, and with the care an ordinarily prudent manager would use under similar circumstances.

42.    Plaintiff additionally relied upon the representations Defendants made in numerous e-mails, letters, and additional communications sent to Plaintiff regarding Plaintiff's investments. Those representations included the specifics regarding the manner in which Plaintiff's money was invested, the success of Plaintiff's investments and the success of the Bayou Funds in general.

43.    As a result of Plaintiff's confidence in and reliance upon Defendants' representations, Plaintiff chose to invest with Defendants much to his detriment.

**History of Plaintiff's Investments in the Bayou Funds and the Representations Defendants Made to Plaintiff Regarding Those Investments**

44.    On or about January 9, 2002, Plaintiff invested an initial $100,000 in the Bayou Accredited Fund.

45.    On or about November 1, 2002, Plaintiff invested an additional $150,000 in the Bayou Accredited Fund.

46.    On or about September 29, 2004 Plaintiff made a final investment of $50,000 in the Bayou Accredited Fund.

47.     On or about September 29, 2004, Defendants acknowledged receipt of Plaintiff's investment.

48.     Defendants used various methods to assure Plaintiff and, upon information and belief, other investors that Defendants were properly handling investor money.   Using a combination of weekly e-mail and monthly mail correspondence as well as periodic telephone conference calls, Defendants purported to keep Plaintiff updated and involved regarding his investments.

49.     In an effort to provide Plaintiff with great comfort, confidence and trust in Defendants' abilities to provide professional service and to insure Plaintiff of the security of his investments, Defendants made numerous efforts to stay in regular communication with Plaintiff and, upon information and belief, Bayou's other investors by providing weekly e-mail updates on the funds' performances.

50.     The various e-mail correspondences received by Plaintiff included information regarding the performance of the funds such as the return on fund investments and the names of securities the funds were invested in as well as the number of positions and the various sectors the funds invested in.

51.     Defendants also conducted periodic conference calls with investors over the telephone during which Mr. Israel and other Defendants answered investor questions, and discussed issues involving the Bayou Group, the performance of their funds and other general issues involving the financial markets and industry.  Investors, including Plaintiff, were invited to call in to listen to and participate in these periodic telephone conferences as well as to pose questions to Bayou management.

52.    In addition, Defendants provided Plaintiff with monthly "NAV Valuations" which purported to show the net asset value of Plaintiff's investments, specifically in the Bayou Accredited Fund.  Each month these NAV Valuations listed the current value of Plaintiff's individual investments, any contributions or withdrawals made that month and the profit/loss for the quarter/month.

53.    For example, Plaintiff received an NAV Valuation dated December 31, 2002 listing his opening capital as of October 1, 2002 as $108,674.  The NAV Valuation further reflected a contribution dated November 1, 2002 of $150,000, no withdrawals and a fourth quarter profit of $3,209, resulting in a closing capital amount of $261,883.

54.    The NAV Valuation dated March 31, 2003 received by Plaintiff listed an opening capital amount of $261,883 as of January 1, 2003.  It further reflected no additional contributions or withdrawals and a profit for the first quarter of $6,071, resulting in a closing capital amount of $267,954.

55.    The NAV Valuation dated February 29, 2004 received by Plaintiff listed an opening capital amount of $305,545 as of February 1, 2004.  It further reflected no additional contributions or withdrawals and a profit for February of $852, resulting in a closing capital amount of $306,398.

56.    The NAV Valuation dated May 31, 2004 received by Plaintiff listed an opening capital amount of $313,120 as of May 1, 2004.  It further reflected no additional contributions or withdrawals and a profit for May of $5,010, resulting in a closing capital amount of $318,130.

57.    The NAV Valuation dated July 30, 2004 received by Plaintiff listed an opening capital amount of $318, 353 as of July 1, 2004.  It further reflected no additional contributions or withdrawals and a profit for July of $4,221 resulting in a closing capital amount of $322,575.

58.    The NAV Valuation dated August 30, 2004 received by Plaintiff listed an opening capital amount of $322,575 as of August 1, 2004. It further reflected no additional contributions or withdrawals and a profit for August of $4,675, resulting in a closing capital amount of $327,249.

59.    The NAV Valuation dated November 30, 2004 received by Plaintiff listed an opening capital amount of $381,774 as of November 1, 2004. It further reflected no additional contributions or withdrawals and a profit for November of $8,514, resulting in a closing capital amount of $390,288.

60.    The NAV Valuation dated December 31, 2004 received by Plaintiff listed an opening capital amount of $390,288 as of December 1, 2004. It further reflected no additional contributions or withdrawals and a profit for December of $2,147, resulting in a closing capital amount of $392,434.

61.    The NAV Valuation dated January 31, 2005 received by Plaintiff listed an opening capital amount of $392,434 as of January 1, 2005. It further reflected no additional contributions or withdrawals and a profit for January of $2,147, resulting in a closing capital amount of $394,750.

62.    The NAV Valuation dated February 28, 2005 received by Plaintiff listed an opening capital amount of $394,750 as of February 1, 2005. It further reflected no additional contributions or withdrawals and a profit for February of $3,994, resulting in a closing capital amount of $398,744.

63.    The NAV Valuation dated May 31, 2005 received by Plaintiff listed an opening capital amount of $407,986 as of May 1, 2005. It further reflected no additional contributions or withdrawals and a profit for May of $2,340, resulting in a closing capital amount of $410,326.

64.    The NAV Valuation dated July 31, 2005 received by Plaintiff listed an opening capital amount of $410,326 as of July 1, 2005.  It further reflected no additional contributions or withdrawals and no profit for July, resulting in a closing capital amount of $410,326.

65.    The July NAV Valuation was the last correspondence Plaintiff received from Defendants that detailed the purported value of his investments with the Bayou Family of Funds. Plaintiff was led to believe the value of his investments in the Bayou Funds totaled $410,326.

**The Demise of the Bayou Family of Funds**

66.    In or about July 27, 2005 Defendants notified Plaintiff by letter of the closing of the Bayou Family of Funds at the end of July 2005.  Included in this correspondence were representations by Defendants that Plaintiff would receive 100% of his investment in the Bayou Family of Funds.

67.    On or about July 29, 2005 Defendants again contacted Plaintiff by letter to provide information regarding the audit and closure of the funds.  In that letter, Defendants referred Plaintiff to the Operating Agreement for specifics on the liquidation of investor funds. Defendants implied that partial distributions to investors could begin by mid-August.

68.    Plaintiff did not hear from Defendants until receipt of a letter dated August 11, 2005 in which Defendants provided a further update on the fund closing process.  This letter also included the July NAV Valuation.  This letter stated that investors could receive 90% of their investments by the following week and that Defendants were aiming for Wednesday, August 17, 2005.  Defendants also stated that the final balance would be paid by the close of August, noting this was "substantially ahead of the time allowed under the Operating Agreement."

69.    Defendants further indicated their offices would be open through October 2005 however, upon information and belief their offices are and have been closed since at least the time the August 11, 2005 letter was received by Plaintiff.

70.    As a result of the acts, omissions and misrepresentations of Defendants, Defendants are individually and collectively liable to Plaintiff for the loss of his investments.

### CAUSES OF ACTION

### COUNT I
### (SECURITIES FRAUD)
### (AS AGAINST ALL DEFENDANTS)

71.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "70" as if fully set forth herein.

72.    Defendants singularly and in concert, engaged in a plan scheme, artifice, and unlawful conspiracy and course of conduct, pursuant to which they knowingly and/or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud upon Plaintiff, and made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements not misleading to Plaintiff.  The purposes and effects of Defendants' schemes were to create the illusion of an investment vehicle operated by Defendants so that Defendants could induce Plaintiff to purchase shares and so that Defendants could convert Plaintiffs' assets.

73.    Defendants, pursuant to said plan, scheme, artifice and unlawful conspiracy and course of conduct, knowingly and recklessly issued, caused to be issued and participated in the issuance of false and misleading statements to the investing public, including Plaintiff, which were contained in various documents specified herein, and failed to disclose material facts to the investing public, including Plaintiff.

74.    Defendants are liable as direct participants in the wrongs complained of herein. Defendants, because of their position of control and authority, were able to and did, directly or indirectly, control the content of various communications and Plaintiff's assets.  Defendants had a duty to promptly disseminate accurate and truthful information with respect to Plaintiff's investments.  Defendants participated in the wrongdoing complained of in order to induce the purchase of Bayou fund shares and to continue the illusion of prospects for growth and increased profitability, and to conceal adverse facts and prospects.

75.    Defendants made omissions to state material facts necessary in order to make statements made not misleading in light of the circumstances in which they were made when they failed to disclose i) that the shares offered and sold by them to Plaintiff were not safe and secure investments, and ii) that Defendants would not provide a return of investment plus profit.

76.    Defendants made such misrepresentations on one or more occasions by the use of the mails, telephone lines or by use of instrumentalities of interstate commerce.

77.    The misrepresentations and/or omissions by Defendants were material in each instance with respect to each of the transactions to which they pertained.  Plaintiff did not know of the falsity of the statements or of the omissions when he purchased the investments and for significant periods of time subsequently.

78.    Defendants knew at the time that they made said representations concerning the investments that such representations were false and/or misleading.

79.    Defendants made each of the subject misrepresentations and omissions in connection with the purchase or sale of securities.

80.    By reason of the foregoing, in each of the referenced instances, Defendants violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

81.    Defendants are liable to Plaintiff for the full amount of all damages as shall be proved upon the trial which include those sustained as the result of their respective acts of securities fraud, in violation of § 12(a)(2) of the Securities Act of 1933, § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  Plaintiff beliefs the aggregate amount of such damages to exceed $410,000 plus interest, costs, and reasonable attorneys' fees.

## COUNT II
## (BREACH OF CONTRACT)
## (AS AGAINST ALL DEFENDANTS)

82.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "81" as if fully set forth herein.

83.    Plaintiff and Defendants were and are parties to the Operating Agreement for the Bayou Accredited Fund whereby Defendants agreed to be responsible for managing, directing and controlling Plaintiff's investments.

84.    Each of the Defendants have materially breached their contractual obligations to Plaintiff by, among other things, failing to return Plaintiff's investments by failing to observe standards of good faith and fair dealing in handling Plaintiff's funds.

85.    Plaintiff fully performed all conditions and obligations of the contractual agreement which were to be performed by Plaintiff, and Plaintiff cooperated fully with Defendants in order to facilitate Defendants' compliance with the contract.

86.    By reasons of Defendants' failure to serve Plaintiff in a proper, skillful, prudent and diligent manner as alleged herein and breach their contractual duty directly, Plaintiff has been damaged in an amount not yet fully ascertained, but believed to be approximately $410,326 plus interest, costs, reasonable attorneys' fees and punitive damages.

## COUNT III
## (BREACH OF FIDUCIARY DUTY)
## (AS AGAINST ALL DEFENDANTS)

87.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "86" as if fully set forth herein.

88.    At all times relevant hereto, Defendants had complete control of Plaintiff's assets that had been provided to them for the purpose of investing in Bayou funds.

89.    Defendants owed Plaintiff a fiduciary duty to act in the best interest of Plaintiff with respect to his investments and were bound to exercise the utmost good faith and reasonable care in the performance of those duties to Plaintiff.

90.    Plaintiff trusted and relied upon Defendants to provide financial and investment advice for him with reasonable skill, care and diligence and to act in the best interests of Plaintiff.

91.    In breach of those fiduciary duties, Defendants, as described herein, among other things i) lied to Plaintiff as to the existence of Bayou funds; ii) lied to Plaintiff concerning the investment of funds; iii) lied to Plaintiff concerning holdings of the funds; iv) lied to Plaintiff concerning the performance of the funds; v) provided Plaintiff with false and misleading documents; vi) converted Plaintiff's investment, and vii) placed their own interests ahead of Plaintiff's and failed to safeguard his assets.

92.    By reasons of Defendants' failure to serve Plaintiff in a proper, skillful, prudent and diligent manner as alleged herein and breach their fiduciary duty directly, Plaintiff has been damaged in an amount not yet fully ascertained, but believed to be approximately $410,326, plus interest, costs, reasonable attorneys' fees and punitive damages.

## COUNT IV
## (CONVERSION
## (AS AGAINST ALL DEFENDANTS)

93.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "92" as if fully set forth herein.

94.    Plaintiff entrusted Defendants with funds which were to have been invested on behalf of Plaintiff in accordance with Defendants' representations.

95.    However, Defendants did not actually invest Plaintiffs' money in an appropriate manner and converted all or a part of Plaintiff's investment funds.

96.    Defendants have each acted wantonly and in total violation of the Plaintiff's rights.

97.    As a result of the wrongful and intentional conversion of Plaintiff's investment funds by Defendants, Plaintiff has sustained damages in an amount believed to be approximately $410,326, plus interest, costs, reasonable attorneys' fees, and punitive damages.

## COUNT V
## (UNJUST ENRICHMENT)
## (AS AGAINST ALL DEFENDANTS)

98.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "97" as if fully set forth herein.

99.    Defendants received and used for their personal benefit Plaintiff's investment assets.

100.    Those investor proceeds were fraudulently obtained from Plaintiff by Defendants.

101.    Because Defendants fraudulently obtained Plaintiff's assets, it is not just, fair, equitable or conscionable for Defendants to benefit from Defendants' ill-gotten gains.

102.    As a consequence of the foregoing, Defendants have been unjustly enriched, in an amount to be determined, but estimated to be at least $410,326.

## COUNT VI
## (NEGLIGENCE)
## (AS AGAINST ALL DEFENDANTS)

103.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "102" as if fully set forth herein.

104.    Defendants owed Plaintiff, at a minimum, a duty of reasonable and ordinary care in their dealings with Plaintiff, including the care and competence of a reasonable investment advisor.

105.    Defendants have failed to perform the duties of care imposed upon them when they were entrusted with Plaintiff's funds, thereby resulting in damages to Plaintiff.

106.    Plaintiff's accounts were handled in a negligent manner incompatible with his stated investment objectives, the purported professional skill and ability of Defendants and the purported professional competence of them.

107.    As a proximate result of Defendants' negligence, Plaintiff has been damaged.

108.    By reason hereof, Plaintiff has been damaged in an amount not yet fully ascertained, but believed to be approximately $410,326, plus interest, costs, reasonable attorneys' fees and punitive damages.

## COUNT VII
## (NEGLIGENT MISREPRESENTATION)
## (AS AGAINST ALL DEFENDANTS)

109.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "108" as if fully set forth herein.

110.    Defendants were, at a minimum, careless in imparting words upon which Plaintiff and others were expected to rely.

111.    Plaintiff, unaware of the misstatements made by Defendants, reasonably relied on the misstatements and misrepresentations of Defendants, Defendants were aware of Plaintiff's reliance, and Plaintiff's reliance caused him to act or fail to act.

112.    Defendants induced Plaintiff to invest his funds on the basis of false information supplied to Plaintiffs by Defendants.

113.    Defendants individually and as agents of Bayou, were the author of words expressed directly to Plaintiff, an individual owed a duty of care by Defendants, with knowledge that the words would be acted upon by Plaintiff.

114.    As a result of Defendants' misrepresentations and omissions, Plaintiff has suffered economic harm.

115.    By reason hereof, Plaintiff has been damaged in an amount not yet fully ascertained, but believed to be approximately $410,326, plus interest, costs, and reasonable attorneys' fees.

## COUNT VIII
### (COMMON LAW FRAUD AND DECEIT)
### (AS AGAINST ALL DEFENDANTS)

116.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "115" as if fully set forth herein.

117.    Defendants intentionally made various material misrepresentations to Plaintiff concerning Bayou funds and Plaintiff's investments.

118.    Defendants intentionally made various omissions in communications to Plaintiff concerning Bayou funds and Plaintiff's investments.

119.    Defendants knew of the falsity of their misrepresentations when made, and at the time of making, knew they were false and made them with the intent of deceiving and defrauding Plaintiff and of inducing Plaintiff to transfer monies to Defendants.

120.    Defendants knew that their omissions to state material facts necessary in order to make statements made concerning the Bayou funds and Plaintiff's investment not misleading, in light of the circumstances in which they were made, contributed to the deception.

121.    Plaintiff was unaware of the falsity of the representations, believed them to be true and relied upon them.

122.    Defendants, without Plaintiff's informed consent, wrongfully, intentionally, fraudulently, maliciously, and deceptively manipulated Plaintiff's assets.    Defendants further executed such transactions for the purpose of enriching themselves, and such conduct was in complete and total disregard for the interests of Plaintiff.

123.    As a result of Defendants' misrepresentations and omissions Plaintiff has suffered economic harm.

124.    In view of the flagrant, wanton and intentionally fraudulent conduct on the part of Defendants, Plaintiff is entitled to punitive damages in amount to be determined at trial.

125.    By reason hereof, Plaintiff has been damaged in an amount not yet fully ascertained but believed to be approximately $410,326, plus interest, costs, reasonable attorneys' fees, and punitive damages.

## COUNT IX
## (ACCOUNTING)
## (AS AGAINST ALL DEFENDANTS)

126.    Plaintiffs repeat and reallege each and every allegation contained and set forth in paragraphs "1" through "125" as if fully set forth herein.

127.   As persons entrusted with Plaintiff's assets, Defendants owed Plaintiff fiduciary duties.  These duties required Defendants at all times to act on behalf of Plaintiff in good faith, to exercise the care that an ordinary prudent person in a like position would exercise under similar circumstances, and to conduct themselves in manner they reasonably believed to be in the best interest of Plaintiff.  As part of their fiduciary duties, Defendants at all times were required to be honest and candid and to make complete disclosure in their dealings with Plaintiff.  Further, in their communications with Plaintiff Defendants were obligated to do so honestly, candidly and completely in all material respects.

128.   Defendants breached their fiduciary and other duties to Plaintiff, failed to faithfully execute service in various ways as described in this Complaint, and profited from their breaches of duty through receipt of unauthorized and undisclosed amounts of money.

129.   As fiduciaries, Defendants must account to their principal, Plaintiff, for the funds that they received during the course of their fiduciary relationship with Plaintiff.

130.   Defendants must therefore render an account to Plaintiff for the funds the Defendants received from Plaintiff, including an accounting for the interest on the funds they obtained as a result of their wrongful use of Plaintiff's funds.

## **DEMAND FOR RELIEF**

By reason of the foregoing, Plaintiffs pray for relief as follows:

(A)   Rescinding Plaintiff's purchases and requiring Defendants to make restitution and repay to Plaintiff the consideration paid by Plaintiff in connection therewith, with interest;

(B)   Alternatively, awarding Plaintiff his damages on Plaintiff's purchase of in an amount to be determined at trial, with interest;

(C)    Awarding Plaintiff pre-judgment and post-judgment interest as a result of the wrongs complained of herein;

(D)    Awarding Plaintiff his costs, disbursements and expenses of this action, including reasonable attorneys' fees, experts' fees and other costs and disbursements;

(E)    Awarding Plaintiff punitive damages in the amount of compensatory damages trebled in view of the flagrant, wanton and intentionally fraudulent conduct described in this Complaint;

(F)    Awarding Plaintiff an amount of compensatory damages trebled and attorneys' fees pursuant to § 349 of the New York General Business Law,

(G)    Awarding Plaintiff such other relief as the Court shall deem just and proper.

Dated: New York, New York
          October 3, 2005

Respectfully submitted,

Kevin P. Conway (KPC 6946)
Jennifer A. Pogorelec (JAP 2256)
Conway & Conway
Attorneys for Plaintiff
Thomas Gleason
1700 Broadway, 31st Floor
New York, New York 10019
Tel: (212) 938-1080